UNITED STATES v. HOUSING FOUNDA-
TION OF AMERICA, Inc. et al.

(two cases).

Nos. 9712, 9737.

United States Court of Appeals
Third Circuit.

Argued July 5, 1949.

Decided Aug. 11, 1949.

Gustave A. Gerber, New York City, Daniel H. Jenkins, Scranton, Pa., for appellants.

Arthur A. Maguire, Scranton, Pa., for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

The appellant Westfield, the corporate defendant and one T. William Smith were convicted of using the mails to defraud. 18 U.S.C.A. § 338 [now § 1341]. That there was ample evidence to sustain the conviction, there is not the slightest doubt. The recital of the events surrounding the venture sounds like one of the stories concerning J. Rufus Wallingford, current in popular fiction a number of years ago. There is testimony which, if believed (and one could hardly help believing most of it) indicated that defendant Westfield came into Wilkes-Barre, Pa., with no money whatever, but only big talk and the ability to get people to do what he wanted them to do. He drew local citizens into his enterprise: a local real estate man, a local lawyer, the proprietors of a barber shop and beauty parlor, and several others. He proceeded to publish advertisements concerning prefabricated houses, offering them for sale at a low price and accepting, through the defendant corporation, something more than $150,000 in down payments. The deposits were not returned. Only about five houses were ever delivered, and these in an unfinished condition at a price more than that advertised.

The jury found the individual defendants, Westfield and Smith, and the corporate defendant guilty on several counts. The trial was a long one. An examination of the testimony reveals nothing which could possibly be the basis for reversal except that which is about to be noted.

At the beginning of the defendants' case counsel for the individual defendant Smith called to the stand the other individual defendant Westfield. He proceeded to examine him about Westfield's relationship with Smith and the corporation by whom Smith was at one time employed. All this was done over the objection and continued objection of counsel for Westfield. The record of examination begins on page 810 of the transcript and continues until page

824. At that point the Trial Judge, following a recess, had looked up the statute and said to the jury: "Congress has passed an Act which reads as follows: (Title 28 Section 632 [see Federal Rules of Criminal Procedure, Rule 26, 18 U.S.C.A.]) 'In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors in the United States courts * * * the person so charged shall, at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any presumption against him.' " He thereupon ruled that examination should not continue. Subsequently, he directed that the testimony be stricken. The Judge told the jury in his charge:

"As to the defendant Westfield, may I say to you that he has failed to testify. The fact that the defendant did not testify in this case, the defendant Westfield, does not create any presumption of guilt against him, nor constitute any admission on his part. It should not have any influence on you in arriving at your verdict. His guilt or innocence is to be determined by you from the evidence which was introduced in this case and from that alone.

"Now there was a little bit of testimony before the jury from the defendant Westfield. Mr. Gerber asked that it be expunged from the record. That was stricken. We say to you, decide this case on the evidence that came from the witnesses on the stand and hold no presumption whatever against the gentleman because he did not take the stand. That is the law of the United States and we expect it to be observed."

That is all that was said.

■ Compelling the defendant Westfield to take the stand and to testify in a criminal prosecution against him is so fundamental an error that the judgment must be reversed and a new trial ordered as to Westfield.[1] The error made arises from confusing the privilege of any witness not to give incriminating answers with the right of the accused not to take the stand in a criminal prosecution against him. Both come within the protection of the clause of the 5th Amendment which provides: "No person * * * shall be compelled in any criminal case to be a witness against himself." [2] The plain difference between the privilege of witness and accused is that the latter may not be required to take the stand at all. We need only say in this case that the accused was required to take the stand and to testify over his objection and in violation of his right protected both by the Constitution and the common law.

The trial was in other respects conducted in a satisfactory manner. Reversal in the face of evidence sufficient to convict is a matter of regret. For the reason given, however, the judgment will be reversed and the case remanded for a new trial as to defendant Westfield.

The above discussion relates to the defendant Westfield alone. We see no merit in the contention that the evidence is insufficient to support the verdict against the defendant corporation. The judgment as to the Housing Foundation of America, Inc., No. 9737, will be affirmed and the reversal will be limited to the defendant Westfield, No. 9712.

---

[1] The right of a person not to be compelled in a criminal case to be a witness against himself is a fundamental right under the 5th Amendment, affecting "the very essence of constitutional liberty and security." Boyd v. United States, 1885, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746. See Counselman v. Hitchcock, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110; United States v. Sprengel, 3 Cir., 1939, 103 F.2d 876, 883; Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 70, 163 A.L.R. 379; 8 Wigmore, Evidence, § 2268, pp. 392, 396, 3d Ed., 1940; 3 Wharton, Criminal Evidence, § 1125, p. 1960, 11th Ed., 935.

[2] Counselman v. Hitchcock, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110. See footnote 1, supra.