**UNITED STATES of America,
Plaintiff,**

**v.**

**Paul M. KAUFMAN et al., Defendants.**

**No. 68 Cr. 485.**

United States District Court
S. D. New York.

Oct. 17, 1968.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for plaintiff, Lawrence W. Newman, Asst. U. S. Atty., Southern Dist. of New York, of counsel.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for defendant Alan Seigenfeld, Gerald Walpin

and Steven B. Rosenfeld, New York City, of counsel.

METZNER, District Judge.

Defendant Seigenfeld has made several motions in this case in which he and eight other defendants have pleaded not guilty to an indictment charging them with conspiring to violate §§ 77q(a) and 77x of Title 15 of the United States Code in the sale of the common stock of Donbar Development Corporation.

*Motion for a Severance*

The primary basis for this motion has become a common one urged by a defendant in a multiple-defendant indictment. Seigenfeld denies any involvement in a conspiracy and asserts that it will be necessary for him to call Florea, a codefendant, to testify that Florea did not offer or pay Seigenfeld any money to buy or sell Donbar stock.[1] His attorney has stated in an affidavit that:

"I am advised that co-defendant Florea has stated to at least two persons that he did not offer or pay defendant Seigenfeld any money to buy or sell Donbar stock, and that he did not arrange for such offer or payment to be made to defendant Seigenfeld by anyone else."

Seigenfeld urges that if he is denied a severance he is foreclosed from calling Florea as a witness, United States v. Housing Foundation of America, 176 F.2d 665 (3d Cir.1949), and he may not comment on the failure of Florea to take the stand in a joint trial if such turns out to be the case, De Luna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5th Cir.1962). He claims that if he has a separate trial he may call Florea as a witness, and if Florea invokes his Fifth Amendment privilege then he can comment on this fact to the jury. At this point no one knows, including Florea, which of the possible alternatives he will choose.

The disposition of this motion must accommodate the rule permitting the joinder of defendants in the same indictment who are alleged to have participated in the same series of transactions (Fed.R.Crim.P. 8(b)) and the rule which allows the court to grant a severance on a showing by a defendant that he will be prejudiced by a joint trial (Fed.R.Crim.P. 14). A charge of conspiracy is, of course, a classic example of the necessity for a joint trial. Since the existence of the conspiracy must be proven from the same evidence, the persons jointly indicted should be tried together. United States v. Lebron, 222 F.2d 531, 535 (2d Cir.1955), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955). The fact that, in addition, individual proof must also be forthcoming against each defendant does not change this rule. Joint trials obviate the necessity of a series of trials with the attendant large expenditure of time and money. They also avoid possible prejudice to the Government. The burden is on the moving defendant to show that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. United States v. Haim, 218 F.Supp. 922, 931 (S.D.N.Y.1963); United States v. Van Allen, 28 F.R.D. 329, 338 (S.D.N.Y.1961).

The question presented here is whether Seigenfeld has made a sufficient showing to entitle him to a severance. The two cases usually relied on to support a motion for a severance before trial are United States v. Echeles, 352 F.2d 892 (7th Cir.1965), and United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y.1966). In *Echeles* the codefendant had testified on a prior trial, exculpating Echeles of any involvement in the crime. In *Gleason* there was no dispute between the Government and the moving defendant that a codefendant had in the past made written and oral exculpatory statements concerning the movant. These two cases were decided on a clear

---

[1]. Florea also denies any involvement in a conspiracy and has moved for a severance because he wants to call Seigenfeld as a witness.

showing of what the codefendant would testify to, and thus the necessity of affording the defendant an opportunity of getting such testimony before the jury.

At the other end of the spectrum, where pretrial applications for severance were denied, are cases such as United States v. Wolfson, 282 F.Supp. 772 (S. D.N.Y.1967) (a mere assertion that the defendant had need to call his codefendants as witnesses); United States v. Crisona, 271 F.Supp. 150 (S.D.N.Y. 1967) (no facts were furnished as to the nature, extent and importance of the exculpatory testimony that would be offered by codefendants); United States v. Saporta, 270 F.Supp. 183 (E.D.N.Y. 1967) (there was no affidavit or other evidence offered that the codefendants would testify on the movant's behalf if there were a severance); and United States v. Berman, 24 F.R.D. 26 (S.D.N.Y.1959) (no showing that the codefendant might be willing to testify in the movant's favor). In each of the first three cases cited above, the court distinguished *Echeles* and *Gleason* because of the clear showing of the right to relief that existed in those cases.

In United States v. Kahn, 366 F.2d 259, 264 (2d Cir.1966), the court held that the possibility of one defendant testifying on behalf of a codefendant does "not make the denial of a motion for severance erroneous [citing cases], at least in the absence of anything in this record indicating that the codefendant would have given exculpatory evidence, see United States v. Echeles, 352 F.2d 892 (7th Cir.1965)."

█ It thus appears that a movant should come within the clear showing evidenced in *Echeles* and *Gleason* before a motion for a severance should be granted. The affidavit in support of this motion neither indicates who advised the attorney what Florea said nor the names of the persons to whom he made statements, nor are there affidavits from them as to what he said. At this stage of the proceedings, therefore, this motion must be denied.

█ However, future events may create sufficient basis for granting the motion. The trial judge has the duty of granting a severance whenever it appears that prejudice exists to one defendant. Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In *Wolfson*, *Crisona* and *Berman*, supra, the motions for a severance were denied, but the right to renew such motions was reserved for the trial judge.

█ While these views dispose of this branch of the motion, reference should be made to Seigenfeld's argument that he will be prejudiced because he will be unable to comment if Florea fails to take the stand on a joint trial. In *De Luna*, supra, the court reversed the conviction of a codefendant when a defendant commented on his refusal to take the stand. Obviously, the prejudice there was not to the defendant in whose shoes Seigenfeld stands, but to the codefendant in whose shoes Florea stands. However, the court, by way of dicta, said that in such situation the defendant is entitled to a severance. Thus, *De Luna* indicates that a severance is in order when a defendant in pursuit of his own acquittal prejudices the right of a codefendant to a fair trial.

Seigenfeld gives *De Luna* a breadth not really existing in the case. The question is not of a *right* to comment, but rather, whether a defendant should be *permitted* to comment in order to assure him a fair trial. In United States v. Kahn, 381 F.2d 824 (7th Cir.1967), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L. Ed.2d 661 (1967), the court sustained the denial of a severance, and in referring to the dicta in *De Luna*, said at page 840:

"The procedural difficulties and the complication of joint trials arising from the rule suggested by dicta in *De Luna* are so great that we cannot say there is an absolute right, without reference to the circumstances of defense at trial, for a defendant to comment on the refusal of a co-defendant

to testify. We think there must be more to justify the disintegration of a trial, such as a conspiracy trial, in which there is a cohesion of crime alleged, defendants charged, and proof adduced. There must be a showing that real prejudice will result from the defendant's inability to comment."

The court distinguished *De Luna* on the ground that the defenses in *De Luna* were mutually exclusive. "There, if one defense were believed, the other could not be. In the instant case, it is not clear that Kahn could not have been found innocent if Sachs and Curran [the moving defendants] were so found." 381 F.2d at 841.

In Hayes v. United States, 329 F.2d 209, 221–222 (8th Cir.1964), cert. denied sub nom., Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964), the trial court was sustained in its refusal to allow counsel to comment on the failure of codefendants to take the stand. *De Luna* was distinguished on the ground that the record in *Hayes* did not justify any finding of prejudice because the defendant testified that he did not commit any wrongful acts and did not "pin any criminal acts upon non-testifying defendants."

At this stage of the proceedings, Seigenfeld seems to be in the position of the appellants in *Kahn* and *Hayes*, since he does not show mutually exclusive defenses nor does he inculpate Florea. Certainly, it is impossible to tell if prejudice to Seigenfeld's right to a fair trial will develop.[2] In any event, as indicated above, the denial of the motion for a

severance at this time is not necessarily the end of the matter.[3]

■ Defendant also urges as grounds for a severance that he wants a speedy trial pursuant to the Sixth Amendment. He points to the practical experience of bringing these cases on for trial when nine sets of attorneys and defendants have to be accommodated in fixing a trial date. The Government has asserted that it is prepared to go forward when the preliminary motions of all defendants have been decided. All of these motions will be submitted to the court this month and it appears that the case will be ready for trial from the Government's side at about the time when the movant would expect to proceed. While there are undoubtedly some problems in moving a case to trial with so many defendants, the calendar judge at the appropriate time will obviously be in the best position to prevent unnecessary delay. The mere existence of a number of codefendants does not of itself support a claim that movant will not have a speedy trial. If such were the case, the right to join defendants could be severely limited.

■ Finally, Seigenfeld requests a severance on the ground that the indictment indicates that at most he was at the outer rim of the conspiracy and he will be prejudiced by the very number of defendants being tried together. He wants to be tried alone so that testimony regarding other defendants will not "rub off" on him and his guilt or innocence will be determined on the basis of evidence solely relevant to his alleged par-

2. It should be noted that, despite *De Luna*, it is perfectly possible that a trial court, if it is faced with this dilemma at the end of a trial, could permit the defendant to comment and sever as to the codefendant. Such a decision will depend on the facts of the particular case.

3. The court has not discussed, in deciding this motion, whether there could ever be a right to comment in this case. It has been sufficient for our purposes that a right to comment might exist in a joint or separate trial, as implied by *Kahn*,

*Hayes* and *De Luna*. However, there is serious doubt that a permissible inference could be drawn by Seigenfeld that Florea's testimony would have exculpated Seigenfeld. Cf. Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394, 398, 24 A.L.R.2d 881 (1950); Morrison v. United States, 124 U.S.App.D.C. 330, 365 F.2d 521 (1966). In addition, it could be argued that Florea, by asserting his Fifth Amendment privilege, could be considered as equally unavailable for testimony to both sides, and therefore neither could comment.

ticipation in the conspiracy. He seeks to have that evidence brought before the jury immediately upon completion of the Government's proof against him.

There is no doubt that the problems of a defendant in a conspiracy trial are great, and we are cited to the oft-quoted concurring opinion of Justice Jackson in Krulewitch v. United States, 336 U.S. 440, 445, 69 S.Ct. 716, 93 L.Ed. 790 (1949). On the other hand, there have been many joint trials of conspiracy counts where the number of defendants far exceeds those present here. See United States v. Bonanno, 177 F.Supp. 106, 113 (S.D.N.Y.1959), and cases cited therein.

The fragmentation of such trials to afford individual defendants a separate trial can effectively thwart the proper use of conspiracy counts. The question is whether a jury can effectively follow the court's instructions and weigh the evidence separately against each defendant. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), relied on by movant, does not stand for the proposition that juries are not competent to discharge these responsibilities under the circumstances of this case. Of course, the court must conduct these trials carefully and with full protection of the rights of each defendant. United States v. Kelly, 349 F.2d 720, 756–757 (2d Cir.1965). However, there is no presumption that this will not happen.

Trials of cases charging fraud in dealing with securities may not be brief, but they are not necessarily complicated. The Government estimates that it will take four weeks to submit its case. A reading of this indictment does not indicate that Seigenfeld is on the outer rim of the conspiracy, far removed from its operations. The same proof would have to be introduced against each defendant to sustain the finding of an agreement to violate the law. The conspiracy alleged covers eight months, a relatively short period of time.

Again, the grounds urged for a severance are insufficient to grant the motion.

*Motion to Dismiss on the Grounds that the Grand Jury Was Improperly Selected*

Seigenfeld refers to the factual material developed on a hearing into the selection of the Grand Jury conducted by Judge Tyler of this court on a similar motion in United States v. Leonetti, D.C., 291 F.Supp. 461, decided June 10, 1968. Seigenfeld adopts that material on this motion, but would have me disagree with Judge Tyler's decision in which he sustained the selection system against attacks based on constitutional, statutory and common law arguments. I have read Judge Tyler's exhaustive and painstaking 52-page opinion and agree with both his analysis and result. I should point out that I do not find that he reached that result reluctantly because of prior decisions in this court or the Court of Appeals, all of which have rejected similar attacks on the method of selecting persons to serve as grand jurors. United States v. Van Allen, 208 F.Supp. 331 (S.D.N.Y.1962), aff'd sub nom., United States v. Kelly, 349 F.2d 720 (2d Cir.1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); United States v. Flynn, 216 F. 2d 354 (2d Cir.1954), cert. denied, 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955); United States v. Dennis, 183 F.2d 201 (2d Cir.1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); United States v. Gottfried, 165 F.2d 360 (2d Cir.), cert. denied, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948); United States v. Greenberg, 200 F.Supp. 382 (S.D.N.Y.1961).

*Motion for Bill of Particulars*

Items A1, A2, B1, D2, D3, D4, E1, E2, E3, F2, F3, F4, F5 and F6 are denied. Item B2 is granted to the extent that the Government should furnish the approximate dates of purchases and sales of Donbar stock in which Seigenfeld was involved as alleged in ¶ 3(*l*) of the in-

dictment. Item B3 is granted. Items C1 and C2 are granted to the extent that the Government shall specify if Seigenfeld was one of the offerees or received secret compensation. Item D1 is granted to the extent of identifying the nominee accounts used by Seigenfeld. Items F1, G1, G2, G3, G4 and G5 are granted except that the last sentence in each of the last two items is stricken.

*Motion for Discovery and Inspection*

Items 1, 2, 5, 6 and 12 are denied. Item 3 is granted. Item 4 is granted. Item 7 is granted solely as to Seigenfeld and omitting memoranda or summaries and documents. Items 8 and 9 are granted, but limited solely as to Seigenfeld. Items 10, 11 and 13 are granted. The material is to be produced by the Government two weeks prior to the date set for trial.

So ordered.